IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ELIZABETH FEDYNICH,

    Plaintiff,

v.                                    Case No. 3:25-cv-00049

BOULDER HOUSING PARTNERS, et al.,

    Defendants.

## BRIEF IN SUPPORT OF MOTION TO DISMISS

## I.  INTRODUCTION

Plaintiff Elizabeth Fedynich, *pro se*, raises a myriad of federal and state law claims against the Central Virginia Housing Coalition ("CVHC") arising out of a housing voucher under the Housing Choice Voucher Program. 42 U.S.C. § 1437. Among many other individuals and organizations, Fedynich has also sued Barbara Woodall and Betty Newbury, who were employees of CVHC at the time of the events giving rise to Fedynich's claims. Fedynich's claims against Woodall, Newbury, and CVHC should be dismissed with prejudice because they are all time-barred or, to the extent they are not, Fedynich has failed to state a claim upon which relief can be granted.

## II.  ALLEGATIONS

Fedynich became a recipient of a federal Section 8 Housing Choice Voucher ("housing voucher") in Denver, Colorado in 2014. (ECF Doc. No. 1, at ¶ 27.) She ported her housing voucher to Virginia under the Virginia Housing Development Authority ("VHDA"). Fedynich alleges that, following her unsatisfactory experience with the Lynchburg Redevelopment and Housing Authority, her housing voucher was transferred to CVHC in March 2020. At that time,

Newbury was in a "leadership position" at the organization, and Woodall was a "housing specialist" assigned to work with Fedynich. (*Id.* at ¶ 13.)[1]  Fedynich describes participating in an "orientation" with Woodall, where Woodall explained to Fedynich that, although Fedynich had a job, CVHC "didn't count her working income for the first year she was housed through CVHC." (*Id.* at ¶ 53.)

Fedynich alleges that, based on her housing voucher, she was approved to secure a 2-bedroom housing unit for her and her daughter, but she had difficulty locating a 2-bedroom unit that would suit her and her daughter's many alleged medical needs and disabilities.  Fedynich did, however, locate a 3-bedroom, first floor unit she believed would accommodate her claimed mobility problems.  But, in addition to having too many bedrooms, the unit was "outside" of Fedynich's "payment standard," meaning it was too expensive. (*Id.* at ¶ 53.).

Fedynich alleges she asked Woodall for an accommodation, specifically, a "larger payment standard" that would allow Fedynich to rent the 3-bedroom unit, but Woodall quickly denied that request.  Thereafter, Fedynich alleges, Woodall "became very difficult to work with" and, despite the CVHC policy to the contrary, began including Fedynich's income from her job in the calculation of how much Fedynich could pay every month for housing.  Fedynich alleges this had the effect of requiring her to pay approximately $600 more per month, thereby effectively disqualifying her from renting the 3-bedroom unit in which she was interested.  Fedynich alleges also that Woodall's actions caused Fedynich to quit her job so that her income would not be considered in connection with her ability to pay for housing, thus causing her to

---

[1] VHDA administers a Section 8 tenant-based Housing Choice Voucher program funded by the U.S. Department of Housing and Urban Development ("HUD").  CVHC is a non-profit organization and one of 30 local housing agencies that VHDA uses to administer the program according to VHDA's Administrative Plan, which establishes policies and procedures for implementing the voucher program in accordance with applicable law and regulations.

miss out on the "enormous benefits of Covid unemployment." (*Id*. at ¶ 24-25(IV), ¶ 53.) Eventually, "Defendant [Anton] Shaw or someone at Virginia Housing . . . did grant the reasonable accommodation for [Fedynich] and she moved into the [3-bedroom] unit." (*Id*. at ¶ 54.)

Fedynich alleges she quickly began having problems with that unit. They included too many people living in an adjoining unit and the fact that, despite an express prohibition on their doing so, they all constantly smoked cigarettes, marijuana, and possibly other drugs inside their unit. Fedynich asserts the smoke from the cigarettes and drugs infiltrated her unit and severely exacerbated her respiratory ailments. Further, she claims that her neighbors and her landlord refused to do anything to abate the problem. Instead, the landlord eventually sought to evict Fedynich beginning in August 2020 based on specious allegations that Fedynich violated the terms of her lease. Fedynich was eventually evicted in September 2020. (*Id.* at ¶ 55-59, 61.)

Fedynich alleges that, from March 2020 through September 2020, she emailed and called Newbury and others begging them to take any of several ameliorative efforts to assist her with resolving her neighbors' smoking. However, Fedynich claims, neither Newbury nor anyone else she contacted took any action to assist her. (*Id.* at ¶ 58-59, 63.)

Fedynich alleges that, on October 29, 2020, Newbury and a representative from VHDA notified her that her housing voucher was being terminated due to her violating the terms of her lease. Fedynich asserts Shaw and Newbury waited until after a lawsuit she filed against them was dismissed to terminate her voucher so as to escape judicial scrutiny and retaliate against her. (*Id.* at ¶ 63-64.)

Based on these allegations, Fedynich appears to assert that, between March 2020 and March 2021, CVHC, Woodall, and Newbury:

1. violated 42 U.S.C. § 3617 by interfering with Fedynich's exercising her rights under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"), or by retaliating against her for exercising those rights;

2. discriminated or retaliated against her based on her disability in violation of § 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("RA");

3. discriminated or retaliated against her in violation of the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA");

4. violated her due process rights under the Fourteenth Amendment to the United States Constitution when they terminated her housing voucher; and

5. intentionally inflicted emotional distress ("IIED") on her.[2]

(*Id.* at ¶ 70-71, 80, 81, 83-84.)

## III.  PRIOR LITIGATION

Fedynich alleges she has filed "this case" before in this Court.  With respect to that prior litigation, Fedynich describes only that the case's number was "3:20 cv 165" and it remained pending from March 9, 2020, through its dismissal without prejudice on September 8, 2020. Fedynich alleges she appealed that dismissal to the Fourth Circuit Court of Appeals on October 5, 2020, and that her appeal was "dismissed" on February 8, 2023.  (*Id.* at ¶ 3-4, 26).  Although Fedynich does not provide a copy of her prior complaint ("2020 Complaint") or the Court's order dismissing it, the Court may take judicial notice of those documents without converting this motion to dismiss under Rule 12(b)(6) into one for summary judgement (2020 Complaint attached at Ex. 1; Dismissal Order attached at Ex. 2).  *See Mitchell v. Henderson*, 128 F.Supp.2d 298, 301 (D. Md. 2001) (the court may take judicial notice of its own records, the case file in

---

[2] Although Fedynich makes passing references to potential violations of "HUD fair housing laws" and other federal regulations, the extent to which she attempts to assert free-standing claims against CVHC, Woodall, or Newbury based on any alleged violation of those purported laws or regulations is unclear.  In any event, any such claims would be untimely for the reasons discussed below.

DKC 96–3011, without converting to a motion for summary judgment.") (*citing* 5A Wright & Miller, Federal Practice and Procedure § 1364 at 479 (2d ed.1990); *see also* Fed. R. Evid. 201; *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239-40 (4th Cir. 1989).

In her 2020 Complaint, Fedynich named, among numerous other defendants, CVHC and Woodall, who the complaint identified as a CVHC "housing agent."  Further, that complaint made only one allegation relevant to Woodall, CVHC, or any of CVHC's employees.  That was that Fedynich was "requesting" from Woodall and others "a reasonable accommodation" in the form of an adjusted "payment standard" that would enable Fedynich "to rent. . . . a first-floor unit, medically required by [Fedynich] due to numerous physical disabilities."  Fedynich's 2020 Complaint expressed concern that she would "lose" the unit if the Court did not intervene quickly to force the defendants to increase her "payment standard."  The 2020 Complaint did not suggest when Fedynich requested an increased payment standard from Woodall or anyone else at CVHC or when, if ever, Woodall or CVHC refused to grant such an increase.  The Court dismissed Fedynich's 2020 Complaint without prejudice for failure to state a claim.[3]

## IV.  LAW AND ARGUMENT

### A.  Standard of Review.

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is "to test the legal sufficiency of the complaint."  *Randall v. U.S.*, 30 F.3d 518, 523 (4th Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

---

[3] On April 5, 2023, Fedynich filed a second complaint that was substantially similar to her current complaint (attached at Ex. 3).  The Court dismissed that complaint as time-barred (order attached at Ex. 4).

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is "plausible" when the plaintiff pleads facts sufficient to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.  *Twombly*, 550 U.S. at 556.  A court should grant a motion to dismiss, however, where the allegations are nothing more than legal conclusions, or where the allegations permit a court to infer no more than a possibility of misconduct.  *See Iqbal,* 556 U.S. at 678-79.

Further, although pro se complaints are afforded liberal construction, the Court need not attempt "to discern the unexpressed intent of the plaintiff," nor does the requirement of liberal construction excuse a clear failure in the pleading to allege a federally cognizable claim.  Indeed, district courts are not required to "conjure up and decide issues never fairly presented to them." *Lucas v. Henrico Cty. Pub. Sch. Bd.*, No. 3:18-cv-402-HEH, 2019 WL 5791343, at *2 (E.D. Va. Nov. 6, 2019).

A district court will reach a statute of limitations defense if the "time bar is apparent on the face of the complaint."  *Roncales v. Cnty. of Henrico*, 451 F. Supp. 3d 480, 493 (E.D. Va. 2020).  A complaint showing that the statute of limitations has run on the claim is the most common situation in which an affirmative defense appears on the face of the pleading, "rendering dismissal appropriate."  *Minter v. Clarke*, No. 2:19-cv-660, 2022 WL 4537904, at *4 (E.D. Va. Sept. 12, 2022), *aff'd,* No. 22-7121, 2023 WL 2204433 (4th Cir. Feb. 24, 2023).

## B.    <u>Fedynich's claims are late</u>

As an initial matter, Fedynich's claims should be dismissed as against CVHC, Newbury, and Woodall because they are time-barred.  Those claims are all based on events that allegedly occurred between "early" March 2020 and March 2021.  (ECF Doc. No. 1, at ¶ 4, 58, 70).

Accordingly, by the time Fedynich filed her present complaint on January 21, 2025, at least three years, nine months, and twenty-one days had passed since the culmination of any relevant conduct attributable to CVHC, Newbury, or Woodall or Fedynich's incursion of any relevant injury. As explained below, the statutes of limitations applicable to each of Fedynich's claims expired during that time span, and Fedynich has not carried her burden of demonstrating her entitlement to sufficient tolling to render any of those claims timely. *See Birchwood-Manassas Associates, L.L.C. v. Birchwood at Oak Knoll Farm, L.L.C.*, 290 Va. 5, 7 (2015) (party seeking the benefit of tolling a limitations period had the burden of demonstrating its entitlement to such).

### 1.    FHA Claims

To the extent Fedynich asserts CVHC, Newbury, or Woodall violated 42 U.S.C. § 3617 by interfering with her rights under the FHA or retaliating against her for exercising those rights, the statute of limitations on any such claim is two years. *See* 42 U.S.C. § 3613(a)(1) ("An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice."); *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 350 (4th Cir. 2011) (FHA claims are barred by the two-year statute of limitations); *Young v. Lake Royale Prop. Owners Ass'n*, No. 5:19-cv-483-FL, 2021 WL 3853258, at *6 (E.D.N.C. Aug. 27, 2021). Clearly then, any such claim is time-barred unless Fedynich demonstrates a basis for tolling the limitations period for, at the very least, more than one year and nine months.

Fedynich cannot do so. Foremost, Fedynich proposes that the pendency of her 2020 Complaint, which was dismissed without prejudice, tolled the limitations period. However, it is well-established that, with respect to federal law claims such as those Fedynich attempts to raise

under 42 U.S.C. § 3617, a prior lawsuit has no tolling effect on a statute of limitations where that lawsuit was dismissed without prejudice. *See Doe v. Virginia Polytechnic Inst. & State Univ.*, 617 F. Supp. 3d 412, 434 (W.D. Va. 2022) ("If a lawsuit is dismissed without prejudice, meaning it can be refiled, the tolling effect of the filing of the suit is wiped out and the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by that filing.") (internal quotation marks and citation omitted); *Stump v. Wilkie*, No. 7:20-cv-00369, 2021 WL 2044201, at *4 (W.D. Va. May 21, 2021) (Dillon, J) ("Generally, outside the Title VII context—if a suit is dismissed without prejudice, meaning that it can be refiled, then the tolling effect of the filing of the suit is wiped out and the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by that filing.") (internal quotation marks omitted); *see also Wright v. Waste Pro USA, Inc.*, 69 F.4th 1332, 1337 (11th Cir. 2023) ("As a general rule, the filing of a lawsuit that later is dismissed without prejudice does not automatically toll the statute of limitations.") (internal quotation marks omitted). Accordingly, Fedynich's 2020 Complaint avails her of nothing with respect to tolling.

As another basis for tolling, Fedynich proposes she is entitled to 125 days of tolling for the period between November 11, 2020, and March 16, 2021, during which time she waited for several of the defendants, including CVHC and Newbury, to hold a hearing. (ECF Doc. No. 1, at ¶ 5). However, even if Fedynich were correct, it would not render her FHA claims timely because they are, at the very least, well over 1,000 days late. For the same reason, Fedynich's FHA claims would not be timely even if she were granted the sixteen days of tolling she demands based on her waiting for another hearing. (*Id.* at ¶ 40). Accordingly, Fedynich's FHA claims against CVHC, Newbury, and Woodall should be dismissed with prejudice as late.

## 2.   RA and ADA Claims

Fedynich's complaint is also late to the extent it claims CVHC, Newbury, or Woodall violated her rights under the RA or the ADA.  The statute of limitations on those claims is one year and is borrowed from Virginia law.  *See Society Without A Name*, 655 F.3d at 347; *Wolsky v. Medical College of Hampton Roads*, 1 F.3d 222, 223 (4th Cir. 1993); *Branscome v. Va. Dept. of Environmental Quality*, No. 7:17-cv-00359, 2017 WL 4897774 (W.D. Va. Oct. 30, 2017). Accordingly, those claims are several years late unless Fedynich demonstrates she is entitled to sufficient tolling.

The first basis for tolling Fedynich asserts is the pendency of her 2020 Complaint and her resulting appeal following the dismissal of that complaint without prejudice.  Although Fedynich does not explicitly invoke any basis for statutory or equitable tolling, Virginia Code § 8.01-229(E)(1) provides in relevant part that

> if any action is commenced within the prescribed limitation period and for any cause abates or is dismissed without determining the merits, the time such action is pending shall not be computed as part of the period within which such action may be brought, and another action may be brought within the remaining period.

*See Board of Regents v. Tomanio*, 446 U.S. 478, 483 (1980) (holding that when a state statute of limitations is borrowed in a federal action, the court must also apply related state tolling rules). According to Fedynich, she is entitled to tolling of the limitations period on all her claims until April 3, 2023, which she appears to identify as the day this Court received notice that the Fourth Circuit had resolved her appeal.

Assuming Fedynich is correct, which, as explained below, she is not, tolling the one-year statute of limitations on her RA and ADA claims until April 3, 2023, means she would have had to file those claims by April 3, 2024 for them to be timely.  She did not do so.  Moreover, even if Fedynich were entitled to the additional 141 days of tolling she claims she earned while she

waited for several of the defendants to conduct hearings, her RA and ADA claims would still be late. Accordingly, Fedynich's RA and ADA claims against CVHC, Newbury, and Woodall should be dismissed with prejudice.

### 3. Due Process and IIED Claims

Likewise, Fedynich's complaint is late to the extent it claims CVHC, Woodall, or Newbury violated her due process rights or intentionally inflicted emotional distress on her. Both types of claims are governed by Virginia's two-year statute of limitations. *See Reid v. James Madison University*, 90 F.4th 311, 318 (4th Cir. 2024) ("There is no dispute that . . . due process . . . claims are subject to the two-year statute of limitations provided by Virginia's personal injury cause of action."); *Gomez v. Hess*, No. 3:20-cv-750, 2023 WL 35212, at *2 (E.D. Va. Jan. 4, 2023) (applying two-year statute of limitations to 14th Amendment due process claim); *Luddeke v. Amana Refrigeration, Inc.*, 239 Va. 203, 207 (1990) (finding two-year statute of limitations applicable to claim for intentional infliction of emotional distress). Accordingly, Fedynich's due process and IIED claims are late unless she demonstrates she is entitled to adequate tolling.

Fedynich cannot do so. As noted above, Virginia Code § 8.01-229(E)(1) can supply tolling based on the pendency of a prior lawsuit, like Fedynich's 2020 Complaint. However, such tolling is warranted only if Fedynich establishes that her present complaint arises from the same "action" as the one that supported her 2020 Complaint, which she filed on March 9, 2020. In Virginia Code § 8.01-229(E)(1), the term "action" means "cause of action," and a "cause of action" is "the set of operative facts which, under the substantive law, gives rise to a right of action." *McKinney v. Va. Surgical Assocs., P.C.*, 284 Va. 455, 460 (2012).

Here, there is no indication that any of the operative facts alleged in Fedynich's 2020 complaint support the due process and IIED claims Fedynich raises in her current complaint. As an initial matter, Newbury was not named as a defendant or otherwise mentioned in Fedynich's 2020 complaint and, therefore, that complaint cannot supply any tolling as to any claims raised against her now. *See Richmond v. Volk*, 291 Va. 60, 67 (2016) ("This Court has recognized that, for the tolling provisions of Code § 8.01-229(E) to apply, there must be identity of the parties in the initial action and the recommenced action.") (internal quotation marks omitted).

Further, the temporal overlap, and, thus, the factual overlap, between Fedynich's current allegations against CVHC, Woodall, or Newbury and her allegations against CVHC and Newburry in her 2020 Complaint is, at most, the first nine days of March 2020. However, Fedynich's allegations in her present complaint fail to indicate that any of the conduct she ascribes to Woodall, Newbury, or any other representative of CVHC occurred during that short, nine-day period.

Indeed, as against Woodall or CVHC, Fedynich's 2020 Complaint asserted only that she had requested an increase in her "payment standard" from Woodall and others. However, Fedynich's IIED claim against Woodall in her current complaint begins with Woodall denying her request for an increased payment standard. (ECF Doc. No. 1, at 80). No such denial by Woodall or any other representative of CVHC was alleged in Fedynich's 2020 complaint and there is no indication the alleged denial occurred prior to Fedynich's filing that complaint on March 9, 2020. Accordingly, that denial cannot be considered as part of the same "cause of action" as that which supported Fedynich's 2020 Complaint.

Nor can any of the events Fedynich now alleges followed that denial, such as the eventual termination of her housing voucher. None of those events were alleged in Fedynich's 2020

11

Complaint, and, moreover, they clearly occurred after Fedynich filed that complaint. Accordingly, because Fedynich's current claims against Woodall, Newbury, and CVHC do not arise from the same "cause of action" as that which premised her 2020 Complaint, she is not entitled to tolling under Virginia Code § 8.01-229(E)(1), and her due process and IIED claims should also be dismissed as time-barred.

## C. Failure to State a Claim

Even if Fedynich's due process and IIED claims are not time-barred to the extent they rely on Woodall's alleged refusal to grant her an increased payment standard in March 2020, they should be dismissed because Fedynich has failed to allege sufficient facts to proceed on either claim.

### 1. Due Process

Fedynich has not alleged a facially plausible violation of her constitutional due process rights. First, Fedynich has not alleged that CVHC or Woodall were acting under the color of state law. To state a claim for a federal constitutional violation under 42 U.S.C. § 1983, a plaintiff must show (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155 (1978); *Livadas v. Bradshaw,* 512 U.S. 107, 132 (1994).

Moreover, Fedynich acknowledges that she eventually received the increased payment standard Woodall allegedly refused her and that she was then able to rent the apartment she desired. Accordingly, Fedynich cannot demonstrate that Woodall's initial denial of the increased payment standard deprived her of any protected right that might support a due process claim. *See Stewart v. Bailey*, 7 F.3d 384, 392 (4th Cir. 1993) (when examining a procedural due process claim, a court must first determine "whether there exists a liberty or property interest which has

been interfered with by the state" and then "inquire[ ] whether the procedures attendant upon that deprivation were constitutionally sufficient."). In any event, Woodall has not alleged facts indicating a legal entitlement to an increased payment standard in the first place. Moreover, any due process claim based on Woodall's initially denying Fedynich an increased payment standard would be defeated by qualified immunity because any right Fedynich had to that standard was not clearly established. *Sharpe v. Winterville Police Dep't*, 59 F.4th 674, 682-83 (4th Cir. 2023).

### 2. IIED

Fedynich has also failed to allege facts to sufficiently support an IIED claim based on Woodall's initially denying her request for an increased payment standard. IIED "has four elements that must be proved: 1) the wrongdoer's conduct was intentional or reckless; 2) the conduct was outrageous or intolerable; 3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and 4) the resulting emotional distress was severe." *Almy v. Grisham*, 273 Va. 68, 77 (2007) (citations omitted). "The tort of intentional infliction of emotional distress is 'not favored' in the law," *id.* at 80, and the outrageousness requirement

> 'is aimed at limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved.' Rather, '[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' 'It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.'

*Harris v. Kreutzer*, 271 Va. 188, 204 (2006) (alterations in original) (citations omitted).

Here, Fedynich has not alleged facts suggesting that Woodall's initially denying her an increased payment standard was beyond all possible bounds of decency. Nor has Fedynich alleged facts indicating that any temporary delay in an increased payment standard occasioned

by Woodall's initial refusal caused Fedynich severe emotional distress.  For these reasons also, Fedynich's IIED claims should be dismissed.

## V.    <u>CONCLUSION</u>

As with Fedynich's prior complaints arising out of her discontent with how she has been treated in connection with her housing voucher, her present complaint is demonstrably late and otherwise fails to state a claim on which relief can be granted.  Accordingly, it should be dismissed with prejudice so as to finally bring to a close Fedynich's vexatious, repetitive litigations against CVHC, Woodall, and Newbury.

**CENTRAL VIRGINIA HOUSING COALITION, BETTY NEWBURY, AND BARBARA WOODALL**

By Counsel

/s/ Jeremy D. Capps
Jeremy D. Capps (VSB No. 43909)
Colin J. Schlueter (VSB No. 82611)
Counsel for Central Virginia Housing Coalition, Betty Newbury, and Barbara Woodall
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia  23255
804-747-5200 - Phone
804-747-6085 - Fax
jcapps@hccw.com
cschlueter@hccw.com

14

# C E R T I F I C A T E

I hereby certify that on the 28th day of February, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Elizabeth Fedynich
1436 George Drive
Marion, IA 52302
720-765-6141 - Phone
graceforliz@yahoo.com

Noah P. Sullivan, Esq.
Gentry Locke
919 E. Main Street
Suite 1130
Richmond, VA 23219
804-956-2069 - Phone
540-983-9400 - Fax
nsullivan@gentrylocke.com

Christina M. Heischmidt, Esq. (VSB No. 80463)
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
8444 Westpark Drive, Suite 510
McLean, VA 22102
703-852-7826 - DD
Christina.Heischmidt@wilsonelser.com

Daniel Philip Peyton, Esq.
McGuire Woods LLP
800 East Canal Street
Richmond, VA 23219804-775-1228 - Phone
804-698-2198 - Fax
dppeyton@mcguirewoods.com

Giovanna Bonafede, Esq.
Wilson Esler Moskowitz Edelman & Dicker LLP
8444 Westpark Drive
Suite 510
McLean, VA 22102
703-852-7807 - Phone
giovanna.bonafede@wilsonelser.com

and I hereby certify that I have mailed by United States Postal Service the document to the following:

Anton Shaw
601 S. Belvidere Street
Richmond, VA 23220
Anton.shaw@vdha.com

Dawn Fagan
918 Commerce Street
Lynchburg, VA 24504

Chandra Hyacinth
918 Commerce Street
Lynchburg, VA 24504
Chandra.hyacinth@lynchburgva.gov

/s/ Jeremy D. Capps
Jeremy D. Capps (VSB No. 43909)
Colin J. Schlueter (VSB No. 82611)
Counsel for Central Virginia Housing Coalition,
Betty Newbury, and Barbara Woodall
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia  23255
804-747-5200 - Phone
804-747-6085 - Fax
jcapps@hccw.com
cschlueter@hccw.com